813 N.E.2d 1004 (2004)
351 Ill. App.3d 343
286 Ill.Dec. 311
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Floyd CUMMINGS, Defendant-Appellant.
No. 1-02-3290.
Appellate Court of Illinois, First District, First Division.
June 21, 2004.
Rehearing Denied August 2, 2004.
As Modified Upon Denial of Rehearing August 16, 2004.
*1005 Richard A. Devine, Renee Goldfarb, Kathryn Schierl and Amy Watroba Kern of the Cook County State's Attorneys Office, for Plaintiff-Appellee.
Michael J. Pelletier and Michael James McDermott, Office of the State Appellate Defender, for Defendant-Appellant.
Justice McBRIDE delivered the modified opinion of the court upon denial of rehearing:
A jury convicted defendant Floyd Cummings of armed robbery. He was sentenced to natural life imprisonment as a habitual criminal. 720 ILCS 5/33B-1 (West 2000)(Habitual Criminal Act). In this appeal, Cummings first claims that his sentence is unconstitutional because the penalties for the identical offenses of armed robbery and armed violence with a category III weapon are disproportionate. Second, he claims that his natural life sentence is unconstitutionally disproportionate to the nature of the offense, his involvement in the offense, his background and character, and the sentences imposed on his codefendants. Finally, he claims that the trial court failed to conduct an adequate inquiry into his posttrial pro se claims of ineffective assistance.
*1006 The evidence at trial showed that on October 29, 2000, Yashika Jones, Lee Washington, and Cummings robbed a Subway Sandwich Shop located at 5300 South Kimbark, Chicago (the Subway). Jones was an employee of the Subway at the time. Washington was her boyfriend. The two planned the robbery and invited Cummings to participate.
At about 10:30 p.m., on October 29, 2000, Jones was working at the Subway. She stepped outside and smoked a cigarette. She spoke with Washington, who was outside with Cummings. When Jones entered the Subway again, she did not lock the employee door. Washington and Cummings entered the Subway through the unlocked employee door. According to Johnny Johnson, the manager on duty at the Subway, Washington carried a baseball bat into the Subway. According to Washington and Jones, it was Cummings who carried the baseball bat. In a statement that he made to an assistant State's Attorney, Cummings claimed that Washington held the baseball bat.
Inside the Subway, Cummings grabbed Johnson by the collar. Washington and Cummings made Johnson unlock the petty cash boxes. They took the money inside the boxes while Jones removed the money from the register in the front of the Subway. Washington and Cummings wanted more money, but Johnson was not able to open the floor safe.
Cummings used some duct tape he found in the office to tape Johnson's hands, legs, and eyes. At one point, Johnson heard one of the men smashing the television monitors and videocassette recorder in the office. Johnson felt debris from the destruction falling on him. Washington claimed that Cummings smashed the objects with the baseball bat. Cummings claimed it was Washington who destroyed the objects using the baseball bat.
Eventually, Washington and Cummings asked Johnson for the keys. One of the men struck Johnson when he said he did not know where the keys were. Cummings claimed that it was Washington who struck Johnson. When Washington and Cummings located the keys, Jones used them to open the door. The three left in Cummings' car with the money. They went to Cummings' house, where they divided the money.
Cummings and Washington drove back to the Subway, hoping to open the floor safe, but as they approached the Subway, they saw the police. Instead of going inside for the floor safe, they went back to Cummings' house. Washington and Jones left Cummings' house together that night. They were arrested shortly thereafter. Each was in possession of some of the proceeds of the robbery. Washington also had the key to the petty cash boxes. Jones and Washington confessed to their participation in the robbery. They pled guilty to charges of armed robbery. Jones was sentenced to six years' imprisonment. Washington was sentenced to eight years' imprisonment.
Washington provided information, which allowed the police to locate Cummings. Johnson viewed a lineup and identified Cummings as one of the offenders. Cummings subsequently gave a handwritten statement to an assistant State's Attorney, in which he admitted his participation in the robbery. After hearing all the evidence, which included Cummings' statement, the jury convicted Cummings of armed robbery.
The trial court held a sentencing hearing. It heard evidence that on September 18, 1984, Cummings was sentenced to a minimum of 5 years' imprisonment and a maximum of 10 years' imprisonment for an armed robbery that occurred in Newaygo *1007 City, Michigan. Cummings was discharged from the Michigan Department of Corrections on May 10, 1996. Also, on June 19, 1967, Cummings was convicted and sentenced in Cook County for murder. He was sentenced to 50 to 75 years' imprisonment. Cummings was paroled from the Illinois Department of Corrections on May 16, 1979. The trial court found that based on the evidence of Cummings' prior convictions, it was required to sentence him as a habitual criminal. The court imposed a sentence of natural life imprisonment.
Cummings claims that his sentence of natural life imprisonment is unconstitutionally disproportionate. He urges us to remand for resentencing. The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship" (Ill. Const. 1970, art. I, § 11) and that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws" (Ill. Const., 1970, art. I, § 2). "These constitutional provisions mandate penalties which are proportionate to the offenses." People v. Christy, 139 Ill.2d 172, 177, 151 Ill.Dec. 315, 564 N.E.2d 770 (1990).
Cummings argues that armed robbery and armed violence predicated on robbery committed with a category III weapon are identical offenses that have disproportionate penalties. He points out that armed robbery, for which he was convicted, is a Class X felony, punishable by 6 to 30 years' imprisonment. 720 ILCS 5/18-2(b)(West 2000); 730 ILCS 5/5-8-1(a)(3) (West 2000). Meanwhile, armed violence predicated on robbery with a category III weapon is Class 2 felony, punishable by three to seven years' imprisonment. 720 ILCS 5/33A-3(b) (West 2000); 730 ILCS 5/5-8-1(a)(5) (West 2000). "A Category III weapon is a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A-1(c)(3) (West 2000). Thus, although he was not charged with or convicted of armed violence, Cummings argues that he should be sentenced to three to seven years' imprisonment for the Class 2 offense of armed violence predicated on robbery with a category III weapon.
Cummings relies on People v. Christy, 139 Ill.2d 172, 151 Ill.Dec. 315, 564 N.E.2d 770 (1990), and People v. Lewis, 175 Ill.2d 412, 222 Ill.Dec. 296, 677 N.E.2d 830 (1996). In Christy, the defendant was convicted of armed violence predicated on kidnapping with a category I weapon and one count of kidnapping. Christy, 139 Ill.2d at 173, 151 Ill.Dec. 315, 564 N.E.2d 770. The defendant claimed that aggravated kidnapping and armed violence predicated on kidnapping with a category I weapon were identical offenses that had disproportionate penalties. Christy, 139 Ill.2d at 181, 151 Ill.Dec. 315, 564 N.E.2d 770. The court agreed. Christy, 139 Ill.2d at 181, 151 Ill.Dec. 315, 564 N.E.2d 770. It affirmed the appellate court's finding that the penalties were unconstitutionally disproportionate "because aggravated kidnapping is a more serious offense than the lesser included offense of kidnapping; yet, when armed violence is predicated on kidnapping with a category I weapon, kidnapping is, in effect, enhanced to a Class X felony and is punished more severely than aggravated kidnapping." Christy, 139 Ill.2d at 174, 151 Ill.Dec. 315, 564 N.E.2d 770.
Relying heavily on Christy, the court in Lewis held that the penalties for armed violence predicated on robbery with a category I weapon and armed robbery were unconstitutionally disproportionate. Lewis, *1008 175 Ill.2d at 423, 222 Ill.Dec. 296, 677 N.E.2d 830. In that case, the defendant was charged with one count of robbery, one count of armed violence predicated on robbery committed with a category I weapon, and one count of armed robbery. Lewis, 175 Ill.2d at 414, 222 Ill.Dec. 296, 677 N.E.2d 830. The defendant brought a pretrial motion to dismiss the armed violence count claiming the penalty for that charge violated the proportionate penalties clause because it was greater than the penalty for armed robbery. Lewis, 175 Ill.2d at 414-15, 222 Ill.Dec. 296, 677 N.E.2d 830. The circuit court agreed, and the supreme court affirmed. Lewis, 175 Ill.2d at 415, 424, 222 Ill.Dec. 296, 677 N.E.2d 830. The court concluded that the armed violence count was properly dismissed, but that "the State [was] not precluded from proceeding against defendant on the armed robbery charge." Lewis, 175 Ill.2d at 423, 222 Ill.Dec. 296, 677 N.E.2d 830.
We find both of these cases distinguishable in significant respects. First, in each cases, the court found that the penalty for a lesser charge was disproportionately enhanced to a penalty more severe than for a greater offense by application of the armed violence statute. In Lewis, the court dismissed the armed violence predicated on robbery charge. The disproportionality occurred because the penalty for robbery was, through application of the armed violence statute, being increased beyond the penalty of the greater offense of armed robbery. Similarly, in Christy, the court vacated the armed violence conviction as disproportionate. When the armed violence statute was applied, the penalty for kidnapping was increased beyond the penalty for the greater offense of aggravated kidnapping.
In this case, Cummings bases his disproportionality argument on a comparison of the offenses of armed robbery and armed violence predicated on robbery with a category III weapon. However, unlike the defendants in Christy and Lewis, Cummings was not charged with the lesser offense of armed violence or robbery. He was charged with the greater offense of armed robbery. See People v. Surles, 126 Ill.App.3d 216, 228, 81 Ill.Dec. 493, 466 N.E.2d 1295 (1984) (armed robbery is a more serious offense than armed violence). The State is not required to proceed on a lesser offense when its evidence is sufficient to support conviction on a greater offense, i.e., armed robbery. See, e.g., People v. O'Mahoney, 169 Ill.App.3d 194, 199, 119 Ill.Dec. 879, 523 N.E.2d 635 (1988) ("The State's Attorney enjoys a wide discretion in both the initiation and the management of criminal litigation and that discretion includes the decision whether to initiate any prosecution at all, as well as to choose which of several charges shall be brought").
We further find this case distinguishable from both Lewis and Christy because Cummings is a habitual offender. Cummings' penalty was based not solely on robbing the Subway while armed with a dangerous weapon, but also on his history of committing violent Class X offenses. The Habitual Criminal Act provides:
"Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." 720 ILCS 5/33B-1(a) (West 2000).
Our courts have recognized the constitutionality of the Habitual Criminal Act. People *1009 v. Hartfield, 137 Ill.App.3d 679, 691-92, 92 Ill.Dec. 281, 484 N.E.2d 1136 (1985); People v. McNeil, 125 Ill.App.3d 876, 882-84, 81 Ill.Dec. 256, 466 N.E.2d 1058 (1984). The Act "is a constitutional exercise of this State's police power to protect our society from habitually violent and heinous criminals." McNeil, 125 Ill.App.3d at 884, 81 Ill.Dec. 256, 466 N.E.2d 1058. "Implicit in this statute is a legislative determination that a three-time offender should be removed from society since he is impervious to the rehabilitative efforts of the State." Hartfield, 137 Ill.App.3d at 692, 92 Ill.Dec. 281, 484 N.E.2d 1136.
In Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the Court recognized that where a defendant is punished under a recidivism statute, the defendant's criminal background must be considered when addressing his claim that his sentence is disproportionate.
"In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the `triggering' offense: `[I]t is in addition the interest ... in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' [Citations.] To give full effect to the State's choice of this legitimate penological goal, our proportionality review of Ewing's sentence must take that goal into account." Ewing, 538 U.S. at 29, 123 S.Ct. at 1189-90, 155 L.Ed.2d at 122-23.
Similarly, in this case, we cannot consider Cummings' disproportionality claim in a vacuum. In determining whether his natural life sentence was proportionate, we must take into account his history as a violent offender. Cummings has no constitutional right to choose the offense with which he will be charged or his penalty. Nor can he erase his violent history. "In spite of previous opportunities to once again acquire useful membership in our society, [Cummings] has continually manifested an egregious disregard for the rights of other citizens." McNeil, 125 Ill.App.3d at 882, 81 Ill.Dec. 256, 466 N.E.2d 1058. Under the circumstances, we find that Cummings' natural life sentence is constitutionally proportionate.
In any event, Cummings concedes that his actions amounted to armed robbery. Under the circumstances, the State was not authorized to charge Cummings with armed violence. Armed violence may not be predicated upon armed robbery. 720 ILCS 5/33A-2(a) (West 2000). Moreover, as pointed out by the State, it lacked authority to prosecute Cummings for armed violence predicated upon robbery. The Lewis court specifically found as follows:
"Because the mandatory minimum penalty for armed violence predicated on robbery committed with a category I weapon violates the constitutional guarantee of proportionate sentencing, the State's Attorney had no authority to charge that offense." Lewis, 175 Ill.2d at 423, 222 Ill.Dec. 296, 677 N.E.2d 830.
Additionally, a long line of cases in this state recognizes that where the State convicts a defendant of armed robbery and armed violence predicated on armed robbery based on the same series of actions, only the armed robbery conviction may stand. See People v. Hudson, 137 Ill.App.3d 606, 611, 92 Ill.Dec. 391, 484 *1010 N.E.2d 1246 (1985); People v. Surles, 126 Ill.App.3d 216, 227, 81 Ill.Dec. 493, 466 N.E.2d 1295 (1984); People v. Griffin, 117 Ill.App.3d 177, 184, 72 Ill.Dec. 750, 453 N.E.2d 55 (1983); People v. Velleff, 94 Ill.App.3d 820, 825-26, 50 Ill.Dec. 222, 419 N.E.2d 89 (1981); People v. Lavoy, 91 Ill.App.3d 639, 645, 47 Ill.Dec. 482, 415 N.E.2d 487 (1980). Thus, the State properly exercised its discretion in charging Cummings with armed robbery rather than armed violence.
We find People v. Jamison, 197 Ill.2d 135, 258 Ill.Dec. 514, 756 N.E.2d 788 (2001), particularly instructive. In that case, the defendant was indicted on charges of first degree murder and aggravated vehicular hijacking. Jamison, 197 Ill.2d at 159, 258 Ill.Dec. 514, 756 N.E.2d 788. The State amended the charges, adding a charge of armed robbery based on the defendant's taking of the contents of the automobile. Jamison, 197 Ill.2d at 160, 258 Ill.Dec. 514, 756 N.E.2d 788. The State amended the charges because it intended to seek the death penalty against the defendant, and under the statutory scheme in effect at the time, aggravated vehicular hijacking was not a predicate offense for the imposition of the death penalty. Jamison, 197 Ill.2d at 159-60, 258 Ill.Dec. 514, 756 N.E.2d 788. The defendant pled guilty to first degree murder and armed robbery. On appeal, the defendant claimed that "the State did an end-run around the language' of the statutes and took `what is essentially a lesser included offense of aggravated vehicular hijacking and imbued it with far graver consequences than the principle offense.'" Jamison, 197 Ill.2d at 161, 258 Ill.Dec. 514, 756 N.E.2d 788. The defendant claimed that "aggravated vehicular hijacking was the more appropriate charge under the circumstances." Jamison, 197 Ill.2d at 161, 258 Ill.Dec. 514, 756 N.E.2d 788.
The court disagreed. It noted that it has long been recognized that "the State's Attorney is endowed with the exclusive discretion to decide which of several charges shall be brought, or whether to prosecute at all." Jamison, 197 Ill.2d at 161, 258 Ill.Dec. 514, 756 N.E.2d 788. It further noted that "[i]t is not a constitutional violation for a prosecutor to consider the respective penalties when choosing which of several applicable charges to pursue." Jamison, 197 Ill.2d at 162, 258 Ill.Dec. 514, 756 N.E.2d 788. The court remarked that the defendant had no constitutional right to compel his prosecution for a lesser charge. Jamison, 197 Ill.2d at 162, 258 Ill.Dec. 514, 756 N.E.2d 788. It held that the defendant's constitutional rights were not violated by prosecution under the statute which provided for the more severe penalty. Jamison, 197 Ill.2d at 162, 258 Ill.Dec. 514, 756 N.E.2d 788. It explained: "[I]t was within the State's discretion to prosecute the armed robbery charge to the exclusion of the allegedly greater aggravated vehicular hijacking charge, irrespective of which charge may be more appropriate under the facts of this case." Jamison, 197 Ill.2d at 162, 258 Ill.Dec. 514, 756 N.E.2d 788.
The same is true in this case. Cummings had no constitutional right to compel his prosecution for armed violence based on robbery with a category III weapon, where the State exercised its discretion in charging Cummings with the more serious offense of armed robbery. It was not improper for the State to charge Cummings with armed robbery because that crime made him eligible for natural life imprisonment as a habitual criminal where the lesser crime of robbery would not have resulted in natural life imprisonment.
Cummings next argues that his natural life sentence is unconstitutional *1011 when compared with the sentences imposed upon his codefendants. The record reveals that Jones and Washington pled guilty to armed robbery, the same Class X offense for which Cummings was convicted. Jones and Washington received sentences within the unenhanced range for armed robbery. Jones was sentenced to the minimum six-year sentence, and Washington was sentenced to eight years' imprisonment. Cummings claims that because his participation in the crime was less than both Washington's and Jones' participation, his penalty of natural life imprisonment is unconstitutionally disproportionate.
As noted above, Cummings was sentenced as a habitual criminal. Nothing in the record indicates that either Washington or Jones had a similar history of committing violent crimes. Moreover, the record is entirely devoid of any records from the sentencing hearings conducted for Jones and Washington. Absent any contrary evidence, we presume that the trial court properly followed the law and evaluated the appropriate factors when sentencing Jones and Washington. People v. Probst, 344 Ill.App.3d 378, 385, 279 Ill.Dec. 546, 800 N.E.2d 834 (2003). Our review of the record at Cummings' sentencing hearing reveals that the trial court properly considered the evidence before it and determined that Cummings was a habitual criminal. Accordingly, the trial court imposed the only sentence permitted by law, a sentence of natural life imprisonment. 720 ILCS 5/33B-1(e) (West 2002). Where Cummings' background supports application of the Habitual Criminal Act and there is nothing to indicate that either Jones or Washington had a similar criminal background, we cannot say that Cummings' sentence was unconstitutionally disproportionate.
As noted above, Cummings was sentenced as a habitual criminal. Nothing in the record indicates that either Washington or Jones had a similar history of committing violent crimes. According to the transcript of her plea hearing, Jones has no criminal background. At Washington's plea hearing, the parties rested on information presented at Washington's 402(c) conference, which is not part of the record. The record contains references by defense counsel to Washington's two prior drug convictions, but we cannot ascertain details relating to those convictions from the record. Regardless, Washington's prior felonies are not similar to those previously committed by Cummings. Moreover, Washington's sentence was the result of his guilty plea and the sentence recommended as part of the plea agreement. The codefendants' criminal histories are not comparable to that of Cummings.
In contrast, our review of the record at Cummings' sentencing hearing reveals that the trial court properly considered the evidence before it and determined that Cummings was a habitual criminal. Accordingly, the trial court imposed the only sentence permitted by law, a sentence of natural life imprisonment. 720 ILCS 5/33B-1(e) (West 2002). Where Cummings' background supports application of the Habitual Criminal Act and there is nothing to indicate that either Jones or Washington had a similar criminal background, we cannot say that Cummings' sentence was unconstitutionally disproportionate.
In his third claim, Cummings argues that the trial court failed to adequately inquire into his pro se allegations of ineffective assistance of counsel. He urges us to remand for a hearing to determine whether his trial counsel was ineffective.
"While a pro se motion for a new trial alleging ineffective assistance of counsel *1012 does not per se require appointment of new counsel to assist in the motion, the trial court must at least examine the factual matters underlying the defendant's claim." People v. Robinson, 157 Ill.2d 68, 86, 191 Ill.Dec. 107, 623 N.E.2d 352 (1993). The trial court need only appoint new counsel to assist in the motion if the court's examination reveals that the defendant's allegations show possible neglect of the case. Robinson, 157 Ill.2d at 86, 191 Ill.Dec. 107, 623 N.E.2d 352; People v. Bull, 185 Ill.2d 179, 210, 235 Ill.Dec. 641, 705 N.E.2d 824 (1998). If the allegations lack merit or pertain to matters of trial strategy, the motion may be dismissed. Robinson, 157 Ill.2d at 86, 191 Ill.Dec. 107, 623 N.E.2d 352; Bull, 185 Ill.2d at 210, 235 Ill.Dec. 641, 705 N.E.2d 824.
On review, our concern "`is whether the trial court conducted an adequate inquiry into the pro se defendant's allegations of ineffective assistance of counsel.'" Bull, 185 Ill.2d at 210, 235 Ill.Dec. 641, 705 N.E.2d 824 (1998), quoting People v. Johnson, 159 Ill.2d 97, 125, 201 Ill.Dec. 53, 636 N.E.2d 485 (1994). At a minimum, the trial court must afford the defendant an opportunity to specify and support his complaints. Robinson, 157 Ill.2d at 86, 191 Ill.Dec. 107, 623 N.E.2d 352. Additionally, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." People v. Moore, 207 Ill.2d 68, 78, 278 Ill.Dec. 36, 797 N.E.2d 631 (2003). Or, "[a] brief discussion between the trial court and the defendant may be sufficient." Moore, 207 Ill.2d at 78, 278 Ill.Dec. 36, 797 N.E.2d 631. The trial court may also base its evaluation of the defendant's pro se allegations "on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." Moore, 207 Ill.2d at 79, 278 Ill.Dec. 36, 797 N.E.2d 631.
In his pro se motion for a new trial and arrest of judgment, Cummings alleged that his trial counsel was ineffective for failing to "follow through with the challenge of the voluntaryness [sic] of the defendant's statement" and failing to submit impeaching police reports as substantive evidence. The record shows that a public defender was originally appointed to represent Cummings. The public defender filed a motion to suppress Cummings' statement to the assistant State's Attorney, claiming that the statement was "obtained as a result of psychological and mental coercion illegally directed against the defendant." After Cummings complained that the public defender had a "conflict of interest" because he had failed to timely communicate with Cummings, the trial court appointed a private attorney to represent Cummings. No hearing was ever held on the motion to dismiss. However, Cummings' statement was introduced at trial. In it, Cummings asserted that the statement was voluntary and that he had been treated fairly by the police.
At the hearing on Cummings' pro se motion, Cummings' trial counsel addressed the trial court with regard to Cummings' pro se motion. She indicated that some of his claims were addressed in her own motion for a new trial. She also recognized that his motion alleged ineffective assistance of counsel, but she was unwilling to argue that she had acted ineffectively. The trial court subsequently asked Cummings if he had anything he wished to say in support of his motion. Cummings responded, "No, sir, I want to stand on it." In ruling on Cummings' pro se motion, the trial court remarked that it had read Cummings" *1013 motion and that it did not believe it was necessary to appoint counsel. The trial court stated that it had considered the facts adduced at trial, its rulings during the trial, and Cummings' motion. Then, the court denied Cummings' pro se motion.
The court gave Cummings the opportunity to argue, explain, and support his allegations. He declined to do so even after defense counsel declined to argue any ineffectiveness. The trial court read and considered Cummings' motions and the facts of the case. The evidence included Cummings' confession, in which he affirmed that he had not been mistreated by police. Under the circumstances, we believe the trial court adequately examined the basis of Cummings' allegations before denying his motion.
Accordingly, we affirm defendant's conviction and sentence of natural life.
Affirmed.
O'MALLEY, P.J. and McNULTY, J., concur.