FIRST DIVISION
February 27, 2006

No.1-03-0067

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | No. 00 CR 16875 |
| | ) | |
| WILLIE HAMPTON, | ) | Honorable |
| | ) | Preston L. Bowie, |
| Defendant-Appellant. | ) | Judge Presiding. |

**MODIFIED ON DENIAL OF REHEARING**

PRESIDING JUSTICE CAHILL delivered the modified opinion of the court:

Defendant Willie Hampton was convicted of eight counts of aggravated criminal sexual assault and two counts of home invasion with a firearm and sentenced to 84 years in prison. Defendant raises five arguments on appeal: (1) the admission of a codefendant's written statement violated defendant's sixth amendment right under the United States Constitution (U.S. Const., amend VI); (2) defendant's 21-year sentences for aggravated criminal sexual assault violate the prohibition against double enhancement; (3) defendant's sentences for aggravated criminal sexual assault violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11); (4) defendant's convictions and sentences on four counts of aggravated criminal sexual assault and one count of home invasion violate the one-act, one-crime rule; and (5) defendant's sentence on the remaining home invasion count violates the proportionate

penalties clause of the Illinois Constitution. Our resolution of this case requires that we address the first issue in light of Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). Our analysis compels us to vacate defendant's convictions and remand to the trial court with directions.

The following evidence was presented at defendant's bench trial.

Y.N. testified that on June 21, 2000, at approximately 3 a.m., she was asleep in her home located at 2016 West 65th Street in Chicago. Y.N. was awakened by defendant, who placed a gun to her head and told her to get out of bed and give him money and "weed." Y.N. recognized defendant despite the fact that he wore a nylon stocking over his head. Y.N. and defendant lived in the same neighborhood and had attended elementary school together.

Y.N. told defendant she did not have money or drugs in the house. Defendant asked Y.N. for house keys, which Y.N. gave to him. Defendant took the keys and unlocked the back door to the house. A man wearing a black-hooded sweater came inside. Y.N. later recognized this man as Cory Durr, whom Y.N. also knew from the neighborhood. A third man also entered the house. The third man wore a nylon stocking over his head, and Y.N. could not identify him.

Defendant and the unidentified man took Y.N. to her bedroom and threatened to kill her if she did not reveal where she was hiding money and drugs. Y.N. continued to deny that she had money or drugs in the house. The unidentified man hit Y.N. in the mouth with his gun. Y.N. then told the men that there might be money in her brother Redrick's bedroom.

Redrick was home asleep with his girlfriend, Emma Hails, at the time. Y.N. and defendant went to Redrick's bedroom. Redrick unlocked the door and defendant and Y.N. entered. Defendant held a gun to Y.N.'s head and told Redrick to give him money. Redrick gave

defendant $100. Redrick and defendant began to argue and defendant hit Redrick in the head with his gun.

Defendant took Y.N. back into her bedroom. Defendant asked Y.N. whether she had a telephone. Y.N. said she had a phone in the kitchen. Defendant told Y.N. to cut the cord on the phone. As defendant and Y.N. moved toward the kitchen, Shelby, Y.N.'s other brother, emerged from his bedroom in the basement. Defendant told Shelby to lie on the floor.

Defendant and Y.N. then went back into Y.N.'s bedroom. Y.N. told defendant to take whatever he wanted. Defendant took some jewelry and then went into the living room with Y.N. and the unidentified man. The unidentified man ordered Y.N. to take off her clothes, which she did. Defendant and the unidentified man then took Y.N. into her bedroom. The unidentified man told Y.N. to get on her knees, and he inserted his penis into Y.N.'s mouth. Defendant, who was standing behind Y.N., put his finger, and then his penis, into Y.N.'s vagina. After a few minutes, Y.N. was told to turn around. Defendant then inserted his penis into Y.N.'s mouth while the unidentified man put his penis into Y.N.'s vagina. The unidentified man stopped the assault suddenly and ran out of the bedroom. Defendant grabbed an Aldi's bag that was filled with Y.N.'s clothes and followed him. Y.N. called the police once the men left her house.

Chicago police officer Daniel Ludwig testified he received a call at approximately 4 a.m. on June 21, 2000, that a robbery had taken place at Y.N.'s address and three black males were seen fleeing the scene. Ludwig and his partner were driving in the area of the alleged robbery when they saw three black males getting out of a blue Chevy Cavalier. One of the men carried an Aldi's grocery bag, which he threw in the car after seeing Ludwig. All three men went into a house located at 6450 South Hoyne Avenue.

Officer Ludwig went to Y.N.'s house and spoke with Y.N. and the other witnesses. Based on information he received, Ludwig went back to the area where the three men were seen leaving the blue Chevy Cavalier. Ludwig retrieved the Aldi's bag from the car and took it to Y.N., who identified the bag as the one taken by defendant. Ludwig then went back to 6450 South Hoyne Avenue and knocked on the door. Ludwig could see the three men looking out a second-floor window but nobody answered the door. Ludwig called the Chicago fire department to make a forced entry into the house. On entering, Ludwig took custody of defendant, Cory Durr and Maurice Alexander. The men were taken to Y.N.'s house for an identification. Y.N. identified defendant and Durr as two of the men in her home earlier that morning. Y.N. had not identified defendant and Durr in her earlier conversations with Ludwig.

The State called Cory Durr to testify. Durr was serving an eight-year prison term after pleading guilty to charges relating to this case. Durr invoked his fifth amendment right against self-incrimination at defendant's trial and refused to answer questions relating to the crime. The trial court told Durr he had no fifth amendment right under the circumstances and could be held in contempt of court if he refused to answer the State's questions. Durr still refused to talk about the crime but admitted giving a handwritten statement to an assistant State's Attorney on June 22, 2000.

The State moved to admit Durr's statement under section 115-10.2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.2 (West 2000) (allowing, in limited circumstances, hearsay statement of a witness who refuses to testify despite court order to do so)). Defendant objected to the statement on the ground that it violated his right to confront the witness. The court admitted the statement, which was then read into evidence.

Durr said the following in his statement to the assistant State's Attorney. Durr met defendant and Maurice Alexander in the early morning hours of June 21, 2000. Defendant told Durr that he and Alexander were on their way to "break into a house and go steal some money." Durr decided to go along. All three men went to defendant's house at 6450 South Hoyne Avenue to pick up guns. They then walked to Y.N.'s house. Defendant told Durr to stand on the back porch of Y.N.'s house and watch for police. After about two or three minutes, defendant opened the back door to the house and let Durr inside. Durr stood in the kitchen while defendant yelled at Y.N., demanding that she give him money. After about 10 or 15 minutes, Durr walked into the living room. Durr saw defendant and Alexander "tearing up the room looking for money." Alexander told Durr to go back into the kitchen and continue looking out for the police. Durr heard someone coming upstairs from the basement. Defendant came into the kitchen, pulled his gun out and ordered the man to lie on the floor. Durr stayed in the kitchen for another 15 minutes. He then went into Y.N.'s bedroom. Durr saw defendant and Alexander sexually assaulting Y.N. He then went back into the kitchen. Defendant and Alexander came "charging towards the door" approximately 5 to 10 minutes later. All three men left Y.N.'s house and ran to defendant's house.

The State offered by way of stipulation the testimony of Officer John Kosiewicz and forensic chemist Julie Wessel. If called as a witness, Kosiewicz would testify he recovered two fingerprints from a bathtub located in Y.N.'s house. If called as a witness, Wessel would testify she received the fingerprint impressions recovered by Kosiewicz. She compared the fingerprints with fingerprints on a card marked by defendant. Wessel concluded that the fingerprints lifted from Y.N.'s bathtub were made by defendant. It was also stipulated that semen recovered from

Y.N.'s vagina was tested and compared to a DNA sample taken from defendant. The results were inconclusive.

Defendant called Tamika Stewart to testify. Stewart said she went to defendant's home between 10 and 10:30 p.m. on June 20, 2000. Defendant was asleep when she arrived. Stewart stayed at defendant's house playing cards with friends until approximately 1 or 1:30 the following morning. Stewart did not see defendant leave the house.

Stewart was outside later that morning when the police took defendant into custody. Stewart said she saw the police take defendant, who was wearing only his boxer shorts, to Y.N.'s house a short distance away. Stewart said she went to Y.N.'s and heard Y.N. tell police that defendant was not involved in the crime.

Stewart also testified that she had attended a Father's Day barbeque at Y.N.'s house a couple of days before the incident. Defendant was also at the barbeque. Stewart stayed outside most of the time but went inside to use the bathroom and to get a plate.

Nina Moore testified she was outside when police drove to Y.N.'s house with defendant in the car. Moore heard the police ask Y.N. whether defendant was one of the men who entered her house earlier that morning. Y.N. responded that he was not.

LaShawn Nicholas testified she went to defendant's house at approximately 2 a.m. on June 21, 2000. Defendant went to sleep shortly after Nicholas arrived. Nicholas left the house at approximate 3:45 a.m. Nicholas was outside Y.N.'s house when the police asked Y.N. to identify defendant. Nicholas heard Y.N. tell police that defendant was not one of her attackers.

Barbara Murray testified that she received a phone call on June 21, 2000, prompting her to go to defendant's house. Murray saw police take defendant and Durr out of defendant's house

6

in their boxer shorts and place them in a squad car. Murray followed the squad car to Y.N.'s house. The police brought Y.N. outside and asked her to identify defendant. Murray heard Y.N. tell the police that she knew defendant and that he was not one of her attackers.

The defense offered by way of stipulation the testimony of Tina Winters. If called as a witness, Winters would testify that she had been "very friendly" with Y.N. for approximately 10 years. Y.N. told Winters a day or two after the incident that defendant was not one of her attackers. Y.N. was later called as a rebuttal witness and denied saying these things to Winters. It was also stipulated that Winters had been convicted of forgery and theft.

Following closing argument, the trial court found defendant guilty on all counts. The court said it "particularly found persuasive the statements of Mr. Cory Durr in that his statements were consistent with the testimony of the victim in this case." The court also found persuasive defendant's fingerprint on the bathtub and the testimony about the Aldi's bag. The court gave "very little weight" to the defense witnesses who testified they heard Y.N. tell police that defendant was not involved in the crime. The court believed this testimony was inconsistent with the fact that police arrested defendant after leaving Y.N.'s house.

Defendant was convicted of eight counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4), (a)(8) (West 2002)) and two counts of home invasion with a firearm (720 ILCS 5/12-11(a)(3) (West 2002)). The court sentenced defendant to 21 years on four counts of aggravated criminal sexual assault, to run consecutively, for a total of 84 years in prison. Defendant was sentenced to 21 years in prison for each of the home invasion counts, to run concurrently with the other sentences. Defendant was also sentenced to six years on the remaining four counts of aggravated criminal sexual assault, also to run concurrently with the

other sentences.

Defendant's first argument on appeal concerns the admission of Cory Durr's statement into evidence. Defendant maintains the admission of Durr's statement violated his sixth amendment right under the United States Constitution to confront a witness against him. See U.S. Const., amend VI. Defendant cites Crawford, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354. The Court in Crawford overturned its holding in Ohio v. Roberts, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), that allowed the admission of a statement by an unavailable witness as long as the statement bore adequate indicia of reliability. The Court held a testimonial statement is admissible only where the witness is unavailable and the accused has had an earlier opportunity to cross-examine the declarant. Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

The State agrees there has been a Crawford violation but argues defendant forfeited his right to assert a confrontation clause challenge in this case. The State cites *dicta* in Crawford where the Court acknowledged that an accused may forfeit his rights under the confrontation clause where there is evidence of wrongdoing by the accused. Crawford, 541 U.S. at 62, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370, citing Reynolds v. United States, 98 U.S. 145, 25 L. Ed. 244 (1879). In Reynolds, the Court held an accused has no right to confront a witness who, through the accused's wrongful procurement, is unavailable to testify.

"The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by [the accused's] own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution

8

does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated." Reynolds, 98 U.S. at 158, 25 L. Ed. at 247.

The State argues defendant forfeited the privilege to confront Cory Durr because he wrongfully procured Durr's silence. The State cites a letter allegedly written by defendant to Durr. The letter is included in the record on appeal and reads in part:

"I think the [S]tate really need[s] you to get down on me to get a conviction. Because they are going to use you on the 16th of July. I spoke with my lawyer about the issue[.] [H]e said the best thing for you to do is to plead the [fifth]. He said you could tell your mother to call the [public defender] and get him to file a motion for you to plead the [fifth] so you don't have to come back here. But I think that [the public defender] is on their side. You can just plead the [fifth] when you get here. He said the [S]tate is [going to] try to scare the [expletive deleted] out of you but there[']s nothing they can do. NOTHING!!! Plus[,] I heard this from the judge[']s mouth. He said if a person does not want to testify[,] he or she [does not] have to. So dog, don't let them spook you. Don't get down on me man. O.K."

At oral argument in this case, the parties disagreed over the type of conduct that would result in

9

forfeiture of an accused's right to confront a witness against him and whether the letter alleged to have been written by defendant was evidence of such conduct. We will address each issue in turn.

Crawford expressly adopted "the rule of forfeiture by wrongdoing" that "extinguishes confrontation claims on essentially equitable grounds." Crawford, 541 U.S. at 62, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370, citing Reynolds, 98 U.S. at 158-159, 25 L. Ed. at 247-48. The Reynolds Court announced the general rule, developed through English common law, that an accused cannot challenge the admission of an out-of-court statement by a witness rendered unavailable by the accused. Reynolds, 98 U.S. at 159, 25 L. Ed. at 248. The Court cited authority for confining application of the rule to facts where the accused's conduct is deemed corrupt. Reynolds, 98 U.S. at 159, 25 L. Ed. at 248. Our own research reveals that courts in other jurisdictions have limited the scope of the forfeiture rule to facts where the witness' silence is procured by the defendant himself through chicanery, threats or actual violence. See State v. Alvarez-Lopez, 136 N.M. 139, 98 P.3d 699 (2004); United States v. Thevis, 665 F.2d 616 (5th Cir. 1982); United States v. Balano, 618 F.2d 624 (10th Cir. 1979); United States v. Mayes, 512 F.2d 637 (6th Cir. 1975). But, as the Reynolds Court explained, any conduct by the accused to keep a witness from testifying against him is impliedly wrongful. Reynolds, 98 U.S. at 159, 25 L. Ed. at 248.

> "[I]n the leading text-books, it is laid down that if a witness is kept away by the
> adverse party, his testimony, taken on a former trial between the same parties
> upon the same issues, may be given in evidence. [Citation.] Mr. Wharton
> [citation] seemingly limits the rule somewhat, and confines it to cases where the

witness has been corruptly kept away by the party against whom he is to be called, but in reality his statement is the same as that of the others; for in all it is implied that the witness must have been wrongfully kept away." Reynolds, 98 U.S. at 158-59, 25 L. Ed. at 247-48.

We conclude that any conduct by an accused intended to render a witness against him unavailable to testify is wrongful and may result in forfeiture of the accused's privilege to be confronted by that witness.

"Such being the rule, the question becomes practically one of fact" to be settled by the trier of fact. Reynolds, 98 U.S. at 159, 25 L. Ed. at 248. The facts in this case relevant to whether defendant forfeited his right to confront Durr by writing a letter urging Durr not to testify against him at trial are in dispute. Most significantly, defendant has not conceded to authoring the letter to Durr. The State asks that we act as the trier of fact and resolve conflicts in the evidence. The State has even gone so far as to ask that we compare the handwriting in the letter to defendant's handwriting. This is not the province of a court of review. We remand this case to the trial court for an evidentiary hearing on the State's forfeiture by wrongdoing claim. See People v. Bramlett, 341 Ill. App. 3d 638, 651, 793 N.E.2d 203 (2003) (remanding for a hearing where record was insufficient for court of review to decide attenuation). If the trial court finds defendant did not forfeit his right to confrontation, Durr's statement was inadmissible. Although no more than cumulative of eyewitness testimony, Durr's statement was so prejudicial a new trial is warranted.

To dispel double jeopardy concerns in case a new trial is granted, we find the evidence was sufficient to prove defendant guilty beyond a reasonable doubt absent Durr's statement. See

11

People v. Taylor, 76 Ill. 2d 289, 309, 391 N.E.2d 366 (1979) (double jeopardy forbids second trial for the purpose of affording the State another opportunity to supply evidence that was insufficient to prove defendant guilty beyond a reasonable doubt in the initial proceeding). Y.N. gave a detailed account of the crime and identified defendant, whom she had known from childhood, as her attacker. Y.N.'s testimony, alone, was sufficient to uphold defendant's conviction. See People v. Smith, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999) (testimony of a single witness, if it is positive and the witness is credible, is sufficient to convict). Y.N.'s testimony was corroborated by evidence relating to the Aldi's bag and defendant's fingerprints found on Y.N.'s bathtub, both of which placed defendant at the crime scene. Although defendant offered testimony from witnesses who allegedly heard Y.N. tell police that defendant was not involved in the crime, the trial judge, who was in the best position to weigh the credibility of these witnesses, decided to give little weight to the testimony. See People v. Wiley, 205 Ill. 2d 212, 227, 792 N.E.2d 1274 (2001) (circuit court, which heard and saw witnesses, was in better position to judge witness credibility and decide weight to be accorded testimony).

We must now address the remaining issues raised by defendant in this appeal, in case the trial court finds on remand that defendant forfeited his right to bring a confrontation clause challenge.

Defendant argues his sentence violated the prohibition against double enhancement. Defendant maintains his 21-year sentence on each of four aggravated criminal sexual assault counts was reached by considering a single factor--that defendant was armed with a firearm--both to elevate the crime to a Class X felony and to justify the imposition of a 10-year mandatory add-on provision.

A statute is presumed constitutional and the party challenging the statute bears the burden of demonstrating its invalidity. People v. Moss, 206 Ill. 2d 503, 519-20, 795 N.E.2d 208 (2003), *rev'd on other grounds*, People v. Sharpe, 216 Ill. 2d 481 (October 6, 2005). Courts must construe a statute in a manner that upholds its validity if it reasonably can be done. Moss, 206 Ill. 2d at 520. The constitutionality of a statute is subject to *de novo* review. Moss, 206 Ill. 2d at 520.

Double enhancement occurs when a single factor is used both as an element of the crime and as an aggravating factor, justifying the imposition of a harsher sentence than might otherwise have been imposed. Moss, 206 Ill. 2d at 533. It is assumed that the legislature, in deciding the appropriate penalty for an offense, necessarily takes into account the factors inherent in the offense. Moss, 206 Ill. 2d at 533. " 'Thus, to use one of those *same* factors that make up the offense as the basis for imposing a harsher penalty than might otherwise be imposed constitutes a double use of a single factor.' " (Emphasis in original.) Moss, 206 Ill. 2d at 533, quoting People v. Gonzalez, 151 Ill. 2d 79, 84, 600 N.E.2d 1189 (1992). The general prohibition against such double enhancement is a rule of statutory construction. Moss, 206 Ill. 2d at 533.

Defendant was sentenced under section 12-14 of the Criminal Code of 1961 (Code) (720 ILCS 5/12-14 (West 2002)), which reads in part:

"(a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense:

(1) the accused displayed, threatened to use, or used a dangerous

13

weapon, other than a firearm, or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon; or

* * *

(4) the criminal sexual assault was perpetrated during the course of the commission or attempted commission of any other felony by the accused; or

* * *

(8) the accused was armed with a firearm; or

(9) the accused personally discharged a firearm during the commission of the offense; or

(10) the accused, during the commission of the offense, personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person.

* * *

(d) Sentence.

(1) Aggravated criminal sexual assault in violation of paragraph (1), (2), (3), (4), (5), (6), or (7) of subsection (a) is a Class X felony. *A violation of subsection (a)(8) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court.* A violation of subsection (a)(9) is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court. A violation of subsection

14

(a)(10) is a Class X felony for which 25 years or up to a term of natural life imprisonment shall be added to the term of imprisonment imposed by the court."  (Emphasis added.)  720 ILCS 5/12-14 (West 2002).

Our supreme court in Moss dealt with a similar challenge to the armed robbery statute. That statute provides that a person commits armed robbery when he or she commits robbery and (1) carries or is otherwise armed with a dangerous weapon other than a firearm; (2) carries or is otherwise armed with a firearm; (3) personally discharges a firearm during the commission of the offense; or (4) personally discharges a firearm during the commission of the offense that proximately causes great bodily harm, permanent disability, permanent disfigurement or death. 720 ILCS 5/18-2 (West 2000).  Under the sentencing provision of the statute, a robbery (normally a Class 1 felony) committed with a dangerous weapon *other than a firearm* is a Class X felony.  720 ILCS 5/18-2(b) (West 2000).  A Class X felony is punishable by 6 to 30 years' imprisonment. 730 ILCS 5 5-8-1 a 3  West 2002 .  Under the remaining three provisions where a firearm is involved, the offense is punishable as a Class X felony with a mandatory add-on of 15 years (where the accused is armed with a firearm), 20 years (where the accused personally discharges a firearm) or 25 years to life (where the accused personally discharges a weapon that proximately causes great bodily harm, permanent disability, permanent disfigurement or death).  720 ILCS 5/18-2(b) (West 2000).  This sentencing scheme is commonly known as the "15/20/25-to-life" provision.

The defendant in Moss challenged the "15/20/25-to-life" provision of the armed robbery statute on the ground that it violated the double enhancement rule.  Moss, 206 Ill. 2d at 508-09. The trial court agreed, finding that the provision authorized an enhancement of both the offense

15

and the sentence based on the presence of a single factor--a firearm. Moss, 206 Ill. 2d at 533-34. The supreme court disagreed, saying:

> "According to the circuit court's reasoning, the firearm factors are used first to enhance the Class 1 felony of robbery to armed robbery, a Class X offense. They are then used a second time to justify the 15/20/25-to-life add-ons that are, under the statute, triggered by these same firearm factors. The problem with this reasoning is that the first enhancement from a Class 1 to a Class X felony comes as a result of *non*firearm conduct." (Emphasis in original.) Moss, 206 Ill. 2d at 534.

The court reasoned that the mandatory add-ons are not triggered by the first form of armed robbery--where a person commits robbery while carrying a dangerous weapon other than a firearm--but by the remaining three, each of which is a Class X felony involving a firearm. Moss, 206 Ill. 2d at 534. "By the terms of the statute, firearm factors have nothing to do with the initial enhancement to a Class X felony, which, as noted, comes when robbery is committed with a dangerous weapon 'other than a firearm.' " Moss, 206 Ill. 2d at 535, quoting 720 ILCS 5/18-2(a)(1) (West 2000).

The State argues the court's reasoning in Moss applies equally here. The State maintains that the initial enhancement under section 12-14 from criminal sexual assault to aggravated criminal sexual assault, a Class X offense, results when criminal sexual assault is committed with a dangerous weapon other than a firearm under subsection (a)(1). 720 ILCS 5/12-14(a)(1) (West 2002). But as defendant points out, he did not use a dangerous weapon other than a firearm in the commission of the offense. Defendant used a firearm. We agree that the State's

16

argument fails on this ground. But we find <u>Moss</u> applicable on other grounds.

Defendant was found guilty of four counts of aggravated criminal sexual assault under subsection (a)(4) and four counts of aggravated criminal sexual assault under subsection (a)(8) of section 12-14 of the Code. A person commits aggravated criminal sexual assault under subsection (a)(4) when he or she commits criminal sexual assault "during the course of the commission or attempted commission of any other felony by the accused." 720 ILCS 5/12-14(a)(4) (West 2002). A violation of subsection (a)(4) is a Class X felony subject to a 6- to 30-year penalty. 720 ILCS 5/12-14(d)(1) (West 2002); 730 ILCS 5/5-8-1(a)(3) (West 2002). A person commits aggravated criminal sexual assault under subsection (a)(8) when he or she commits criminal sexual assault while armed with a firearm. 720 ILCS 5/12-14(a)(8) (West 2002). A violation of this subsection is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court. 720 ILCS 5/12-14(d)(1) (West 2002).

As the State concedes on appeal, defendant's convictions and sentences under subsection (a)(4) must be vacated because there were only four acts of penetration. But subsection (a)(4) served as the ground for the trial court's initial enhancement of the criminal sexual assault offense from a Class 1 felony to a Class X felony punishable by 6 to 30 years' imprisonment. The trial court's 15-year enhancement of defendant's sentence from 6 years to 21 years on the remaining counts of aggravated criminal sexual assault was made under subsection (a)(8). The firearm factor was used only once--to enhance defendant's sentence. There has been no violation of the prohibition against double enhancement in this case.

Defendant next argues his sentences for aggravated criminal sexual assault violate the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, §11. Under

this provision, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §11. Defendant maintains that the 15-year add-on provision of section 12-14(a)(8) is unconstitutionally disproportionate to armed violence predicated on criminal sexual assault with a category I weapon and aggravated criminal sexual assault by some other means.

The question we must answer in deciding whether a proportionate-penalties violation has occurred is whether the penalty at issue has been set by the legislature according to the seriousness of the offense. Moss, 206 Ill. 2d at 522. Our supreme court has in the past recognized three ways in which a penalty will violate the proportionate penalties clause: (1) the penalty is cruel, degrading or so wholly disproportionate to the offense committed as to shock the moral sense of the community; (2) similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more severely; and (3) offenses with identical elements are given different sentences. Moss, 206 Ill. 2d at 522.

Defendant argues that, under the third test, the penalty for aggravated criminal sexual assault while armed with a firearm (Class X offense punishable by 21 to 45 years' imprisonment) is disproportionate to armed violence predicated on criminal sexual assault with a category I weapon (Class X offense punishable by 15 to 30 years' imprisonment). 720 ILCS 5/12-14(d)(1), 33A-3 (West 2002). Defendant relies on People v. Christy, 139 Ill. 2d 172, 564 N.E.2d 770 (1990), and People v. Lewis, 175 Ill. 2d 412, 677 N.E.2d 830 (1996).

The defendant in Christy was convicted of kidnaping and armed violence predicated on kidnaping with a category I weapon. Christy, 139 Ill. 2d at 173. On appeal, the defendant argued armed violence predicated on kidnaping with a category I weapon (Class X felony

18

punishable by 6 to 30 years' imprisonment) is unconstitutionally disproportionate to aggravated kidnaping (Class 1 felony punishable by 4 to 15 years' imprisonment). Christy, 139 Ill. 2d at 177-78, 181. The supreme court agreed. Christy, 139 Ill. 2d at 181. The court looked at both statutes and concluded that the elements necessary to each were identical. Christy, 139 Ill. 2d at 181. "Since the elements which constitute aggravated kidnapping and armed violence are identical, common sense and sound logic would seemingly dictate that their penalties be identical." Christy, 139 Ill. 2d at 181. Because the elements were identical and armed violence was punished more severely, the court vacated the defendant's conviction for armed violence and remanded for sentencing on the offense of aggravated kidnaping. Christy, 139 Ill. 2d at 174, 181.

The court in Lewis relied on Christy to reach a similar conclusion. The defendant in that case was charged with robbery, armed robbery (Class X felony punishable by 6 to 30 years' imprisonment) and armed violence predicated on robbery committed with a category I weapon (Class X offense punishable by 15 to 30 years' imprisonment). Lewis, 175 Ill. 2d at 414, 418. The trial court dismissed the armed violence predicated on robbery count as unconstitutionally disproportionate to armed robbery. Lewis, 175 Ill. 2d at 415. Our supreme court affirmed. Lewis, 175 Ill. 2d at 424. The court found that armed violence predicated on robbery committed with a category I weapon and armed robbery were identical offenses. Lewis, 175 Ill. 2d at 418. A person could be found guilty of either offense on a showing that he committed robbery while armed with a handgun. Lewis, 175 Ill. 2d at 418. Because the mandatory minimum sentence for armed violence predicated on robbery committed with a category I weapon was 15 years' imprisonment, while the mandatory minimum sentence for armed robbery was 6 years'

imprisonment, the court concluded that the penalties were unconstitutionally disproportionate. Lewis, 175 Ill. 2d at 418, 423. The court noted that the State was not precluded from proceeding against the defendant on the armed robbery charge. Lewis, 175 Ill. 2d at 423.

The State argues that, under Lewis, there can be no proportionate penalties violation because armed violence predicated on criminal sexual assault does not exist. The State misconstrues the Lewis holding. There is nothing in the Lewis decision that would lead us to conclude that criminal sexual assault cannot serve as a predicate offense for armed violence. The Lewis court held armed violence predicated on robbery committed with a category I weapon violated the disproportionate penalties clause because it carried a mandatory minimum sentence greater than the mandatory minimum sentence for armed robbery, an identical offense. It is the other way around in this case. Defendant argues aggravated criminal sexual assault with a firearm carries a greater mandatory minimum sentence than armed violence predicated on criminal sexual assault with a category I weapon. The statute defendant alleges is unconstitutional is aggravated criminal sexual assault.

The State also cites People v. Cummings, 351 Ill. App. 3d 343, 813 N.E.2d 1004 (2004), which distinguished Lewis and Christy on facts similar to those present here. The defendant in Cummings was convicted of armed robbery and sentenced to an extended term of natural life imprisonment. Cummings, 351 Ill. App. 3d at 344. On appeal, the defendant argued armed robbery (Class X felony punishable by 6 to 30 years' imprisonment) and armed violence predicated on robbery committed with a category III weapon (Class 2 felony punishable by three to seven years' imprisonment) are identical offenses with disproportionate penalties. Cummings, 351 Ill. App. 3d at 346. Although the defendant was not charged with or convicted of armed

violence, he argued he should be sentenced in accordance with the armed violence statute. Cummings, 351 Ill. App. 3d at 346. The court disagreed. Cummings, 351 Ill. App. 3d at 353. The court distinguished Christy and Lewis on the ground that, in those cases, the penalty for a lesser charge was disproportionately enhanced to a penalty more severe than for a greater offense through application of the armed violence statute. Cummings, 351 Ill. App. 3d at 347. Unlike the defendants in Christy and Lewis, the defendant in Cummings was not charged with the lesser offense of armed violence or robbery. Cummings, 251 Ill. App. 3d at 347. He was charged with the greater offense of aggravated robbery. Cummings, 351 Ill. App. 3d at 347. The court held the State was not required to proceed on the lesser offense when the State's evidence is sufficient to support a conviction on the greater offense and affirmed the defendant's conviction for armed robbery. Cummings, 351 Ill. App. 3d at 347-48, 353.

We agree with the holding in Cummings that the State need not proceed on a lesser offense when there is sufficient evidence to convict on a greater offense. But we do not agree that the constitutional prohibition against disproportionate penalties for identical crimes may be relaxed where the State decides to proceed only with the crime carrying a greater penalty.

The court in Lewis rejected an argument by the State that the trial court, in dismissing the armed violence charge as violating the proportionate penalties clause, usurped the State's discretion in evaluating the evidence and deciding what offenses to charge. Lewis, 175 Ill. 2d at 422. The court cited the following language from Christy:

" 'Generally, prosecutorial discretion is a valuable aspect of the criminal justice system. [Citation.] In the present case, however, prosecutorial discretion will effectively nullify the aggravated kidnapping statute, as skilled State's Attorneys

21

will usually seek the more severe sentence and, therefore, charge defendants with armed violence rather than aggravated kidnapping. An ineffective aggravated kidnapping statute is not what the legislature intended when it enacted both the armed violence statute and aggravated kidnapping statutes.' Christy, 139 Ill. 2d at 180." Lewis, 175 Ill. 2d at 417.

The court went on to say that the State's argument misconstrues the nature of the defendant's challenge to the armed robbery statute. Lewis, 175 Ill. 2d at 422. The defendant did not allege improper use of prosecutorial discretion. Lewis, 175 Ill. 2d at 422. Rather, "in a more fundamental attack," the defendant argued the State had no authority, discretionary or otherwise, to charge the offense because the offense violated the proportionate penalties clause. Lewis, 175 Ill. 2d at 422.

We also find Cummings distinguishable on the ground that the defendant in that case was a habitual offender. Cummings, 351 Ill. App. 3d at 348. The defendant's extended term sentence of natural life imprisonment was imposed under the Habitual Criminal Act (720 ILCS 5/33B-1(a) (West 2000)). Cummings, 351 Ill. App. 3d at 348. The court found the defendant's sentence constitutionally proportionate due to his history as a violent offender. Cummings, 351 Ill. App. 3d at 349.

We believe Christy and Lewis are dispositive of defendant's proportionate penalties challenge. A person commits aggravated criminal sexual assault when he commits criminal sexual assault while armed with a firearm. 720 ILCS 5/12-14(a)(8) (West 2002). "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except first degree murder, attempted first degree murder, intentional

22

homicide of an unborn child, predatory criminal sexual assault of a child, aggravated criminal sexual assault, aggravated kidnaping, aggravated battery of a child, home invasion, armed robbery, or aggravated vehicular hijacking." 720 ILCS 5/33A-2(a) (West 2002). Dangerous weapons include category I weapons, which in turn include handguns, sawed-off shotguns, sawed-off rifles, any other firearm small enough to be concealed on the person, semiautomatic firearms or machine guns. 720 ILCS 5/33A-1 (West 2002). The statutes are identical for purposes of a proportionate penalties analysis. Commission of criminal sexual assault while armed with a firearm constitutes both aggravated criminal sexual assault and armed violence predicated on criminal sexual assault with a category I weapon.

Since the elements of aggravated criminal sexual assault while armed with a firearm and armed violence predicated on criminal sexual assault with a category I weapon are identical, "common sense and sound logic would seemingly dictate that their penalties be identical." Christy, 139 Ill. 2d at 181. But, as noted above, aggravated criminal sexual assault while armed with a firearm is a Class X felony with a mandatory 15-year add-on, dictating a penalty range between 21 to 45 years in prison. 720 ILCS 5/12-14(d)(1) (West 2002). Armed violence predicated on criminal sexual assault with a category I weapon, on the other hand, carries a sentencing range between 15 and 30 years in prison. 720 ILCS 5/33A-3 (West 2002). To conclude: We agree with defendant that the 15-year mandatory add-on provision of section 12-14(d)(1) of the Code violates the proportionate penalties clause because it makes aggravated criminal sexual assault punishable more severely than the identical offense of armed violence predicated on criminal sexual assault with a category 1 weapon.

The State, in its petition for rehearing, argues the legislature amended the armed violence

statute in response to Christy and Lewis to exclude certain predicate offenses, including aggravated criminal sexual assault.  The State maintains that, by excluding aggravated criminal sexual assault as a predicate offense for armed violence, the identical elements test for proportionate penalties review fails.  But the legislature excluded *aggravated* criminal sexual assault as an available predicate offense, not criminal sexual assault.  These are distinct offenses.  See 720 ILCS 5/12-13, 12-14 (West 2002).  As written, criminal sexual assault may serve as a predicate offense for armed violence.  It is not the function of the judiciary to re-write statutes.  See People v. Burdunice, 211 Ill. 2d 264, 271, 811 N.E.2d 678 (2004).

Because we find the 15-year mandatory add-on for aggravated criminal sexual assault unenforceable, defendant, if not entitled to a new trial based on a Crawford violation, is entitled to a new sentencing hearing.  If a new sentencing hearing is held, the trial court is directed to sentence defendant in accordance with section 12-14(d)(1) of the Code as it existed before amendment by Public Act 91-404 (Pub. Act 91-404, eff. January 1, 2000) (adding subsection (a)(8) and the 15-year mandatory add-on for violation of subsection (a)(8) to subsection (d)(1)).  See People v. Pizano, 347 Ill. App. 3d 128, 136, 806 N.E.2d1100 (2004) (proper remedy where a statutory amendment is found to have violated proportionate penalties clause is to remand the cause for a new sentencing hearing under the statute in effect before the adoption of the amendment).  Based on our resolution of this issue, we need not reach defendant's alternative argument that aggravated criminal sexual assault with a firearm is unconstitutionally disproportionate to other forms of aggravated criminal sexual assault.

Defendant next argues he was improperly convicted of two counts of home invasion where only one illegal entry occurred.   The State agrees that one of the home invasion

24

convictions must be vacated. As stated earlier, the State also agrees with defendant that four of the aggravated criminal sexual assault convictions must be vacated because the evidence supported a finding of only four acts of penetration.

Defendant's final argument concerns whether his 21-year sentence on the remaining home invasion count violates the proportionate penalties clause. Under section 12-11(a)(3) of the Code, a person commits *home invasion when, without authority, he knowingly enters the dwelling place of another* and, while armed with a firearm, uses force or threatens the imminent use of force on a person in such dwelling place, regardless of whether injury results. 720 ILCS 5/12-11(a)(3) (West 2002). A violation of section 12-11(a)(3) is a Class X felony for which 15 years will be added to the term of imprisonment imposed by the court. 720 ILCS 5/12-11(c) (West 2002). Defendant argues section 12-11(a)(3) violates the proportionate penalties clause because its penalty is more severe than the penalty imposed for the more serious offense of aggravated battery with a firearm, which is punishable as a Class X felony with no mandatory add-on. See 720 ILCS 5/12-4.2(a)(1), (a)(3) (West 2002); 730 ILCS 5-8-1(a)(3) (West 2002).

As explained above, the supreme court has used three methods to identify proportionate penalty violations. See Moss, 206 Ill. 2d at 522. Those methods include: (1) a penalty violates the proportionate penalties clause if it is cruel, degrading or so wholly disproportionate to the offense committed as to shock the moral sense of the community; (2) a penalty violates the proportionate penalties clause where similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more severely; and (3) the proportionate penalties clause is violated where offenses with identical elements are given different sentences. Moss, 206 Ill. 2d at 522. Defendant's argument falls under the second

25

method, also known as the cross-comparison test.  Moss, 206 Ill. 2d at 522.

The cross-comparison test involves a two-step inquiry: (1) whether the measures being compared share common statutory purposes, and (2) if the purposes are related, whether the less serious offense is punished more harshly than the more serious offense.  Moss, 206 Ill. 2d at 522.  If the statutory purposes are different, comparative proportionality review is inappropriate.  Moss, 206 Ill. 2d at 523.  If the statutory purposes are not different, a violation of the proportionate penalties clause results where the penalty prescribed for the less serious offense is greater than the penalty prescribed for the more serious offense.  Moss, 206 Ill. 2d at 523.

The supreme court recently explained that the problem with the cross-comparison test is there is no principled, objective way to define statutory purpose.  Sharpe, 216 Ill. 2d at 518.  After conducting a thorough review of cross-comparison analysis under the proportionate penalties clause, the court said:

"[W]e have concluded that cross-comparison analysis has proved to be nothing but problematic and unworkable, and that it needs to be abandoned.  Those cases that used such an analysis to invalidate a penalty are overruled, and this court will no longer use the proportionate penalties clause to judge a penalty in relation to the penalty for an offense with different elements."  Sharpe, 216 Ill. 2d at 519.

The Sharpe court described the case law emanating from the cross-comparison analysis as "absurd" and "obviously wrong."  Sharpe, 216 Ill. 2d at 489, 516..  The court concluded "[a] defendant may no longer challenge a penalty under the proportionate penalties clause by comparing it with the penalty for an offense with different elements."  Sharpe, 216 Ill. 2d at 521.

Here, defendant's only challenge to subsection (a)(3) of the home invasion statute arises

under the former cross-comparison test. Defendant does not argue the penalty violates due process or is cruel, degrading or so wholly disproportionate to the offense committed as to shock the moral sense of the community. Nor does defendant challenge the home invasion statute by comparing it to an offense with identical elements. Defendant's argument thus fails. The home invasion statute does not violate the proportionate penalties clause. See People v. Guevara, 216 Ill. 2d 533, 544-47 (2005).

To summarize, we vacate defendant's convictions and sentences and remand the cause to the trial court with directions that it conduct a hearing to decide whether defendant forfeited his right under the confrontation clause to challenge the admission of Cory Durr's out-of-court statement. Should the trial court find that defendant did not forfeit his right to bring a confrontation clause challenge, defendant is entitled to new trial. If, on the other hand, the trial court finds defendant has forfeited that right, we direct the trial court to reinstate defendant's convictions on four counts of aggravated criminal sexual assault under section 12-14(a)(8) of the Code (720 ILCS 5/12-14(a)(8) (West 2002) (criminal sexual assault while armed with a firearm)) and one count of home invasion. The trial court is to conduct a new sentencing hearing on the aggravated criminal sexual assault convictions but reinstate defendant's 21-year sentence for home invasion. Defendant's convictions and accompanying sentences on four counts of aggravated criminal sexual assault under section 12-14(a)(4) of the Code (720 ILCS 5/12-14(a)(4) (West 2002) (criminal sexual assault perpetrated during the course of the commission or attempted commission of any other felony by the accused)) and the remaining count of home invasion are vacated and are not to be reinstated should the trial court find that defendant forfeited his rights under the confrontation clause.

27

Judgment vacated and cause remanded with directions.

GORDON and McBRIDE, JJ., concur.